Slip Op. 11-70

UNITED STATES COURT OF INTERNATIONAL TRADE

---

SHELL OIL COMPANY, C/O GULF COAST       :
    DRAWBACK SERVICES, INC.,
                                        :
                        *Plaintiff*,
                                        :     Court No. 08-00109
            v.                          :

UNITED STATES,                          :

                        *Defendant*.    :

---

[Denying Plaintiff's Motion for Summary Judgment, and granting summary judgment for Defendant.]

Dated:  June 20, 2011

Galvin & Mlawski (John J. Galvin); for Plaintiff.

Tony West, Assistant Attorney General; Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director, Commercial Litigation Branch, Civil Division, U.S. Department of Justice (Tara K. Hogan); Richard McManus, Senior Attorney, Office of the Chief Counsel, Bureau of Customs & Border Protection, U.S. Department of Homeland Security, Of Counsel; for Defendant.

# OPINION

RIDGWAY, Judge:

In this action, Plaintiff Shell Oil Company contests the U.S. Customs Service's denial of protests filed by Shell seeking drawback (refund) of certain taxes and fees.  *See* Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Pl. Brief") at 4-5.[1]  Distilled to its essence, the issue presented is the timeliness of Shell's requests for such drawback.  *See* Defendant's

---

[1] The U.S. Customs Service – formerly part of the U.S. Department of Treasury – is now part of the U.S. Department of Homeland Security, and is commonly known as U.S. Customs and Border Protection.  *See* Bull v. United States, 479 F.3d 1365, 1368 n.1 (Fed. Cir. 2007).  The agency is referred to as "Customs" herein.

Response to Plaintiff's Motion for Summary Judgment ("Def. Brief") at 1, 5, 8.

The relevant facts are relatively straightforward and not in dispute.  The action involves seven claims and one partial claim for non-manufacturing substitution drawback associated with certain petroleum products that Shell imported between 1993 and 1994, and acceptable substitute finished petroleum derivatives that were exported during the same period.  *See* Pl. Brief at 1; Def. Brief at 4.

In pertinent part, the drawback statute requires all drawback claims to be filed within three years of the date of exportation of the substitute merchandise.  *See* 19 U.S.C. § 1313(r)(1) (1994).[2] It is undisputed that Shell filed timely drawback claims, expressly seeking drawback only as to the import duties that the company had paid upon importation of the petroleum products at issue.  *See* Pl. Brief at 1; Plaintiff's Reply to Defendant's Response in Opposition to Plaintiff's Motion for Summary Judgment ("Pl. Reply Brief") at 8, 23; Def. Brief at 4-5, 6, 7, 11-12, 13.  It is similarly undisputed that Customs refunded as drawback 99% of the import duties, in accordance with the drawback statute.  *See* Pl. Brief at 1; Def. Brief at 5, 12; 19 U.S.C. § 1313.  Finally, it is also undisputed that, on November 7, 1997 (more than three years after the date of Shell's exportation of the substitute petroleum products), Shell filed protests with Customs, seeking – for the first time – drawback as to Harbor Maintenance Tax ("HMT") and Environmental Tax ("ET") payments that Shell had made in connection with the imports at issue.  *See* Pl. Brief at 1; Pl. Reply Brief at 6; Def.

---

[2]Except as otherwise indicated, all statutory citations are to the 1994 edition of the United States Code.

Brief at 5, 7.[3]  Customs promptly denied Shell's protests.  *See* Pl. Brief at 1; Def. Brief at 5.  Shell thereafter filed a timely summons in this Court.

This action, which has been designated a test case pursuant to USCIT Rule 84, is now before the Court on Shell's Motion for Summary Judgment.  Shell maintains that it timely requested drawback of HMT and ET, that its protests were wrongly denied, and that its claims for drawback of HMT and ET should be sustained.  *See* Pl. Brief at 4-5, 13; Pl. Reply Brief at 23-24.[4]  In contrast, the Government argues that Shell failed to seek drawback of HMT and ET within the statutory three-year period following the company's exportation of substitute merchandise, that Shell's requests for HMT and ET therefore were untimely, and that Shell's protests therefore were properly denied.  *See* Def. Brief at 1, 6, 13.  According to the Government, <u>Aectra</u> requires the entry of judgment in its favor, and the dismissal of Shell's complaint.  *See* Def. Brief at 1, 6, 13; <u>Aectra Refining & Marketing, Inc. v. United States</u>, 565 F.3d 1364 (Fed. Cir. 2009).

---

[3]The Harbor Maintenance Tax ("HMT") is a tax on port use imposed pursuant to the Water Resources Development Act of 1986.  *See* <u>Aectra Refining & Marketing, Inc. v. United States</u>, 31 CIT 2086, 2087 n.2, 533 F. Supp. 2d 1318, 1318 n.2 (2007) (*citing* 26 U.S.C. § 4461).  The Environmental Tax ("ET") is a "tax imposed on crude oil received at a United States refinery and on petroleum products entered into the United States for consumption, use, or warehousing."  *See id.*, 31 CIT at 2087 n.4, 533 F. Supp. 2d at 1318 n.4 (*citing* 26 U.S.C. § 4611).

[4]In its Motion for Summary Judgment, Shell – for the first time – sought drawback of Merchandise Processing Fees ("MPF"), which are fees "charged 'for the provision of customs services,' and '[f]or the processing of merchandise that is formally entered or released during any fiscal year,'" and which are "intended to reimburse Customs for costs incurred in the processing of imported and exported goods."  *See* Pl. Brief at 2 n.3, 4-5, 13; Pl. Reply Brief at 6, 19, 23; <u>Texport Oil Co. v. United States</u>, 185 F.3d 1291, 1296 (Fed. Cir. 1999) (*citing* 19 U.S.C. § 58c(a)(9)).  In the course of oral argument, Shell advised that, because the company failed to raise drawback of MPF in its protests and in its Complaint, it has abandoned all of its claims as to drawback of MPF.  *See* Recording of Oral Argument at 1:01:50-1:02:15.

Jurisdiction lies under 28 U.S.C. § 1581(a).  For the reasons that follow, Shell's Motion for

Summary Judgment must be denied, and summary judgment is granted in favor of the Government.

## I. **Background**

This action involves seven claims and one partial claim for non-manufacturing substitution

drawback associated with certain petroleum products that Shell imported between 1993 and 1994,

and acceptable substitute finished petroleum derivatives that were exported during the same period.

*See generally* 19 U.S.C. § 1313(p) (addressing drawback and "Substitution of finished petroleum

derivatives").  At issue is the timeliness of Shell's claim for drawback (refund) of certain taxes and

fees, specifically HMT and ET.

The drawback statute requires all drawback claims to be filed within three years of the date

of exportation of the substitute merchandise, and claims that are not completed within the three-year

period are – in the words of the statute – "considered abandoned."  *See* 19 U.S.C. § 1313(r)(1).  A

complete drawback claim consists of "[a] drawback entry and all documents necessary to complete

a drawback claim."  *See* 19 U.S.C. § 1313(r)(1).[5]  At the time of the transactions in question, claims

filed under the provision of the drawback statute at issue here (*i.e.*, the "substitute petroleum

derivatives" provision) were limited to 99% of "the amount of the duties paid on, or attributable to"

---

[5]*See also* 19 C.F.R. § 191.2(i) (1995) (stating that a "drawback claim" is comprised of "the
drawback entry and related documents required by . . . regulations which together constitute the
request for drawback payment"); 19 C.F.R. § 191.2(j) (1998) (same).

The "drawback entry" is "[the] document containing a description of, and other required
information concerning, exported or destroyed articles on which drawback is claimed."  19 C.F.R.
§ 191.2(h) (1995); *see also* 19 C.F.R. § 191.2(k) (1998) (same).

the imported petroleum products.  *See* 19 U.S.C. § 1313(p); 19 U.S.C. § 1313(a).[6]

Shell's timely drawback claims, filed in 1995 and 1996, sought drawback only as to the import duties that it had paid.  Each "Drawback Entry" form (Customs Form 7539) that Shell filed with Customs required Shell to state its "net claim" specifying the precise sum that it sought.  Nowhere did Shell claim for (or even refer to) drawback of HMT and ET – much less include HMT and ET in the "net claim" figure that the company provided on each of the drawback entry forms that it filed with Customs.[7]  Customs paid all of Shell's drawback claims in full, refunding 99% of the import duties as requested in the drawback claims that Shell had filed.

Thereafter, on November 7, 1997 (after the statutory three-year period for the filing of drawback claims had expired), Shell filed protests with Customs, seeking – for the first time – drawback as to HMT and ET payments that Shell had made in connection with the imports at issue.  Customs denied Shell's protests less than a month later, on December 3, 1997, stating:

> Under provisions of 19 U.S.C. § 1313(b) & (p) drawback is allowed upon Customs duty paid on imported merchandise.  Harbor Maintenance Tax (HMT) is an incidental expense incurred upon a vessel entering a harbor.  The HMT is not incurred as a result of the importation of merchandise but simply imposed for the use

---

[6]At the time, a different provision of the statute provided for more generous drawback on "unused merchandise."  Specifically, imported merchandise that was either exported or destroyed under Customs' supervision within three years of importation, and which was not used in the United States, was eligible for drawback of 99% of "any duty, tax, or fee imposed under Federal law because of . . . importation."  *See* 19 U.S.C. § 1313(j) (addressing drawback and "Unused merchandise"); 19 U.S.C. § 1313(a).

[7]In a 1997-98 rulemaking, Customs' regulations were revised to, *inter alia*, "clarify what documents constitute a complete drawback claim."  62 Fed. Reg. 3082, 3087 (Jan. 21, 1997).  As amended, the regulations now expressly require that a drawback claimant "correctly calculate the amount of drawback due" as an element of a "complete claim."  *See* Aectra, 565 F.3d at 1371-72 (discussing 19 C.F.R. § 191.51(b) (1998)).

of the harbor.  The fee is collected by U.S. Customs for the benefit of the Army
Corps of Engineers.

Protest No. 5301-97-100421 (Dec. 3, 1997) (same language used to deny all of Shell's protests).

Some months later, Shell commenced this action, filing a timely summons in this Court.[8]

---

[8]This action was originally part of <u>Shell Oil Co.  v. United States</u>, Court No. 98-05-02198
(Ct. Intl. Trade filed May 20, 1998).  That action remained on the Reserve Calendar pending the
decision in <u>George E. Warren Corp. v. United States</u>, 341 F.3d 1348 (Fed. Cir. 2003).  After <u>George
E. Warren</u> issued, this action was severed from Court No. 98-05-02198, which was stipulated for
judgment on an agreed statement of facts on the grounds that Shell's claims for drawback of taxes
and fees remaining thereunder were asserted within three years of exportation.  *See* Stipulated
Judgment on Agreed Statement of Facts, <u>Shell Oil Co.</u>, Court No. 98-05-02198 (July 9, 2008).

Upon severance from Court No. 98-05-02198, the instant action was suspended under <u>Aectra
Refining & Marketing, Inc. v. United States</u>, Court No. 04-00354 (Ct. Intl. Trade filed July 23,
2004).  Following the issuance of <u>Aectra</u>, 565 F.3d 1364 (Fed. Cir. 2009), Shell filed the pending
Motion for Summary Judgment.  This case was thereafter designated as a lead case, and dozens of
cases were suspended hereunder.

In addition, after the pending Motion for Summary Judgment was filed, some of the
merchandise covered by one of the drawback entries here at issue was severed from this action, and
was designated as a new case and then stipulated for judgment on an agreed statement of facts
(again, on the grounds that the claims for drawback of taxes and fees were asserted within the
statutory three-year period).  *See* Order, <u>Shell Oil Co. v. United States</u>, Court No. 08-00109 (Feb.
23, 2010); Stipulated Judgment on Agreed Statement of Facts, <u>Shell Oil Co.  v. United States</u>, Court
No. 10-00069 (Feb. 7, 2011).

Indeed, numerous cases that were suspended under this action – including cases brought by
Shell – involved protests seeking drawback of taxes and fees that were filed within three years of
exportation, even though the original drawback claims only sought drawback of import duties.  The
Government has agreed to resolve such cases by stipulated judgment on agreed statements of facts.
*See*, *e.g.*, Stipulated Judgment on Agreed Statement of Facts, <u>Shell Oil Co.</u>, Court No. 04-00069
(Feb. 7, 2011) (cited above); Stipulated Judgment on Agreed Statement of Facts, <u>Williams Alaska
Petroleum, Inc. v. United States</u>, Court No. 04-00370 (Mar. 8, 2011); Stipulated Judgment on
Agreed Statement of Facts, <u>Citgo Petroleum Corp. v. United States</u>, Court No. 04-00656 (Apr. 12,
2011).

In the course of oral argument, the Government explained that, in the instant case, if Shell
had filed its protests or otherwise asserted its claims for drawback of HMT and ET  within three

In 1999, Congress amended the relevant language of the drawback statute.  Among other things, Congress expanded the scope of drawback available under the "substitute petroleum derivatives" provision of the statute, to include other import-related expenditures in addition to customs duties.  Specifically, in relevant part, the 1999 amendments made eligible for drawback "any duty, tax, or fee imposed under Federal law because of . . . importation."  *See* 19 U.S.C. § 1313(p) (2000); 19 U.S.C. § 1313(j) (2000).[9]

In addition, the 1999 amendments suspended the standard statutory three-year period for the filing of drawback claims, but only as to "drawback claim[s] filed within 6 months after the date of enactment of [the 1999 amendments]" for which the statutory three-year period had expired.  *See* 1999 Trade Act, Pub. L. No. 106-36, § 2420(e), 113 Stat. 127, 179 (1999).[10]  The effect of that

---

years of exportation, or if Shell had asserted its claims during the six-month "grace period" following the 1999 amendments to the drawback statute, the Government would have consented to stipulated judgment as it has done in other cases, including those discussed above.  *See* Recording of Oral Argument at 1:31:10-1:31:36 (Government stated that, if protests seeking drawback of taxes and fees were filed within three years of export, the Government would not dispute that claimant is entitled to drawback of taxes and fees); *see also id.* at 2:17:05-2:17:25 (Government stated that Customs is treating protests seeking drawback of taxes and fees that are filed within three years of export as amendments to initial drawback claims); *id.* at 2:23:16-2:23:55 (Government stated that, if Shell had asserted the instant claims for HMT and ET during six-month "grace period," Government would have consented to stipulated judgment).

[9]*See also* Aectra, 565 F.3d at 1370-71; Aectra, 31 CIT at 2088, 533 F. Supp. 2d at 1319-20 (discussing 1999 amendments).

[10]Specifically, the 1999 amendments provided that:

The amendments made by this section [amending this section] shall take effect as if included in the amendment made by section 632(a)(6) of the [1993] North American Free Trade Agreement Implementation Act.  For purposes of section 632(b) of that Act [providing that the NAFTA Implementation Act amendments applied to any entry filed after 1988 or unliquidated as of the Act's passage], the 3-year requirement

language was to "creat[e] a six-month grace period in which otherwise untimely [drawback] claims could be filed or re-filed to obtain relief under the amended statute." *See* Aectra, 565 F.3d at 1370-71. As a result, between June 25, 1999 and December 25, 1999, importers who had failed to make such claims within the statutory three-year period were expressly authorized to file claims for drawback of "any duty, tax, or fee imposed under Federal law" paid on imported merchandise "because of its importation." Unlike other importers who seized on this opportunity to file otherwise untimely drawback claims, Shell took no action to avail itself of the 1999 amendments. *Compare*, *e.g.*, Aectra, 565 F.3d at 1367 n.2 (noting that plaintiff in Aectra re-filed drawback claims "in December 1999 pursuant to a temporary suspension of the three-year limitations period accompanying a June 25, 1999 amendment to the drawback statute").

Shortly thereafter, however, the Court of Appeals issued its decision in Texport, interpreting the statute's "because of . . . importation" language to preclude the payment of drawback on any "duty, tax, or fee that is assessed in a nondiscriminatory fashion against all shipments" – not just imports – "utilizing ports." *See* Texport Oil Co. v. United States, 185 F.3d 1291, 1295-97 (Fed. Cir. 1999). Texport ruled the Merchandise Processing Fee ("MPF") to be eligible for drawback, concluding that the MPF "is explicitly linked to import activities." *See* Texport, 185 F.3d at 1296. On the other hand, reasoning that the HMT is "assessed in a nondiscriminatory fashion against all

---

set forth in section 313(r) of the Tariff Act of 1930 shall not apply to any drawback claim filed within 6 months after the date of the enactment of this Act [June 25, 1999] for which that 3-year period would have expired.

1999 Trade Act, § 2420(e), 113 Stat. 179 (first and fourth alteration in original) (citations omitted); *see also* Aectra, 565 F.3d at 1370-71.

shipments utilizing the ports" (not just imports), Texport ruled the HMT to be ineligible for drawback.  *See* Texport, 185 F.3d at 1296-97.  George E. Warren held the ET to be ineligible for drawback, for similar reasons.  *See* George E. Warren Corp. v. United States, 341 F.3d 1348 (Fed. Cir. 2003) (holding ET ineligible for drawback, and ruling reversal of Texport unwarranted).

In December 2004, Congress amended the drawback statute with the express intent of overturning Texport and eliminating the distinction between taxes and fees that discriminate against imports and those that do not.  *See* S. Rep. 108-28 (2003), at 173 (stating that "the U.S. Court of Appeals for the Federal Circuit erred in overturning the U.S. Court of International Trade's ruling in [Texport] that [the "unused merchandise" provision of the drawback statute] allows drawback of [HMT]").  In particular, the 2004 amendments deleted the "*because of . . . importation*" language, and instead made eligible for drawback "any duty, tax, or fee imposed under Federal law *upon entry or importation*."  *See* 19 U.S.C. § 1313(j) (Supp. V 2005) (emphases added); *see also* S. Rep. 108-28, at 173.  With the 2004 amendments, taxes and fees such as HMT and ET were thereafter indisputably eligible for drawback.

Unlike the 1999 amendments, which included a "grace period" to allow the filing (or re-filing) of otherwise untimely drawback claims, the 2004 amendments applied only to any "drawback claim filed on or after [the date of the 2004 amendments' enactment] and to any drawback entry filed before that date if the liquidation of the entry [was] not final on that date."  *See* Miscellaneous Trade and Technical Corrections Act of 2004, Pub. L. 108-429, Title I, § 1557(b), 118 Stat. 2579 (2004).  "Nothing in the text of the [2004 amendments] states or suggests that [the amendments were] intended to waive the normal three-year limit" on the filing of drawback claims.  *See* Aectra,

565 F.3d at 1370; *see also id.* (noting that "it was not unreasonable to assume that Congress would limit the right to those who had previously attempted to claim [drawback of HMT] within the three-year limitations period").

The Court of Appeals most recently considered these statutory provisions in <u>Aectra</u>, a case with some striking similarities to the case at bar.  *See* <u>Aectra Refining & Marketing, Inc. v. United States</u>, 565 F.3d 1364 (Fed. Cir. 2009).  Like Shell here, the plaintiff in <u>Aectra</u> (Aectra) timely filed drawback claims within three years of its export of substitute petroleum derivatives.  *See id.*, 565 F.3d at 1367.  Like the drawback claims filed by Shell here, however, Aectra's timely-filed claims sought drawback of import duties only.  *See id.*, 565 F.3d at 1367.  After Customs liquidated Aectra's drawback entries and refunded the requested import duties in full, Aectra (like Shell) filed protests, seeking – for the first time – drawback of taxes and fees.  *See id.*, 565 F.3d at 1368.  But, as in this case, Aectra's protests were filed more than three years after the date of exportation.  *See id.*, 565 F.3d at 1368.

Like Shell's protests, Aectra's protests also were denied.  *See* <u>Aectra</u>, 565 F.3d at 1368.  Aectra sought review in this court, which rejected Aectra's arguments and sustained Customs' denials of the protests.  *See* <u>Aectra Refining & Marketing, Inc. v. United States</u>, 31 CIT 2086, 2097, 533 F. Supp. 2d 1318, 1326 (2007).

The Court of Appeals affirmed.  In so doing, the Court of Appeals acknowledged that, at the time of the transactions in <u>Aectra</u> (as here), the law did not yet provide for drawback of taxes and fees in cases like <u>Aectra</u> and the case at bar, which involve substitute petroleum derivatives.  *See* <u>Aectra</u>, 565 F.3d at 1367.  The Court further observed that, like Shell here, Aectra was aware that

the issue of drawback of taxes and fees was a hot topic in the industry at the time. *See id.*, 565 F.3d at 1367. In light of that fact, the Court of Appeals took note that, like Shell here, Aectra offered "no explanation for why it did not include protective claims for [taxes and fees] in its . . . drawback claims other than its belief that such claims would not be successful at the administrative level." *See id.*, 565 F.3d at 1367.

The Court of Appeals held that Aectra was entitled to no relief because Aectra failed to properly claim drawback of taxes and fees within the statutory three-year period within which all drawback claims must be filed. *See generally* <u>Aectra</u>, 565 F.3d 1364; 19 U.S.C. § 1313(r)(1). The Court of Appeals rejected Aectra's argument that, since the statute does not expressly require a calculation of the amount of tax and fee drawback claimed, Aectra's drawback claims were "complete" for purposes of the statute "because [Aectra's] drawback entries themselves [seeking drawback of import duties only] were timely filed within three years of export." *See* <u>Aectra</u>, 565 F.3d at 1371-73. In particular, the Court reasoned that, although "the drawback statute itself does not *explicitly* state that a calculation of taxes and fees sought must be included . . . as one of the 'documents necessary to complete a drawback claim,'" a regulation which took effect in 1998 (specifically, 19 C.F.R. § 191.51(b)) requires a drawback claimant to "correctly calculate" the amount of drawback due, which in turn requires "an accurate calculation of the entire amount that [a claimant] seeks to be refunded under the drawback statute." *See id.*, 565 F.3d at 1371-72 (emphasis added).

Due to the explicit nature of the 1998 regulation (which does not apply in the case at bar), the Court of Appeals had no occasion in <u>Aectra</u> to consider matters such as whether, absent that

1998 regulation, the drawback statute or regulations otherwise required that a drawback claimant

include in its timely-filed drawback claims all sums (including taxes and fees) that the claimant

sought to recover, and whether (even if a drawback claimant was not required to include in its

timely-filed claim all sums sought as drawback, including taxes and fees) a claimant was

nevertheless required to give Customs some sort of notice of its claim for drawback of taxes and fees

within the statutory three-year period.

      The Court of Appeals also rejected various other theories of recovery advanced by Aectra.

For example, much like Shell here, "Aectra argued in essence that the 2004 [amendments to the

statute] suspended the three-year limitations period." *See* Aectra, 565 F.3d at 1368.  The Court

dismissed Shell's contention, noting that, although the 1999 amendments created a special "six-

month grace period" for the filing (or re-filing) of otherwise untimely claims, "[n]othing in the text

of the [2004 amendments] states or suggests that [the 2004 amendments were] intended to waive the

normal three-year limit" on the filing of drawback claims. *See id.*, 565 F.3d at 1370.[11]  Similarly,

like Shell here, Aectra argued that "claims for [taxes and fees] were 'implicit' in its timely-filed

drawback claim seeking import duties." *See id.*, 565 F.3d at 1373 n.11.  But the Court concluded

that there is "no basis for such an argument." *Id.*  Finally, like Shell here, "Aectra argued that it was

---

[11]Parsing the 2004 amendments' effectiveness provision, the Court of Appeals explained in Aectra that "[t]he first clause applies prospectively to new drawback 'claims' filed on or after December 3, 2004, which may seek drawback on exports made within the previous three years," while "[t]he second clause covers certain drawback 'entries' filed before December 3, 2004, but not yet finally liquidated on that date." *See* Aectra, 565 F.3d at 1370.  The Court of Appeals noted that the second clause "applies the 2004 . . . amendments to unliquidated entries that already included a timely protective request for HMT" and "is necessary to make clear that such unliquidated entries were entitled to the benefit of the amendments." *See id.*

not required to file a claim for [taxes and fees] because such a claim would have been futile." *See id.*, 565 F.3d at 1368; *see also id.* at 1367, 1373.  However, the Court of Appeals ruled that "futility does not excuse the failure to file a proper claim for limitations purposes," and that "[a] claimant is generally required to file a *complete* and *specific* claim *within the limitations period*, even if the government authority to whom the claim is presented is certain to dispute the validity of the claim."  *See  id.*, 565 F.3d at 1373 (emphases added).

Against this backdrop, Shell maintains that it is entitled to drawback of HMT and ET paid on the subject imports.  The Government counters that Shell's claims for drawback of HMT and ET were not timely, and that Customs therefore properly denied Shell's protests.  Thus, as in <u>Aectra</u>, the ultimate question presented here is whether Shell timely claimed drawback of HMT and ET.

## II.  <u>Standard of Review</u>

Under USCIT Rule 56, summary judgment is appropriate where "there is no genuine issue as to any material fact" and the moving party is entitled to judgment as a matter of law.  USCIT R. 56(c).  Further, where it is otherwise appropriate, summary judgment may be granted *sua sponte* in favor of the non-moving party, or even in the absence of any motion, provided that all parties are afforded an appropriate opportunity to come forward with relevant evidence.  *See* <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 326 (1986); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2720, pp. 339-55 (3d ed. 1998) (explaining that "summary judgment may be rendered in favor of the opposing party" even absent a cross-motion); 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2720, p. 71 (3d ed. Supp. 2011) (noting that 2010 revisions to

Federal Rules of Civil Procedure amended Rule 56 to expressly authorize *sua sponte* grant of summary judgment in favor of non-moving party, or even in absence of any motion).[12]

In the case at bar, the parties differ as to the meaning and scope of the statutory and regulatory provisions at issue.  They are, however, in agreement as to all material facts.  Moreover, although the Government's response to Shell's Motion for Summary Judgment is not specifically denominated a cross-motion for summary judgment, the Government has expressly requested "that the Court grant judgment on the record for defendant and dismiss [Shell's] complaint."  *See* Def. Brief at 1; *see also id*. at 6, 13 (same).  And the pendency of Shell's Motion for Summary Judgment alone would have afforded both parties adequate notice and the requisite opportunity to present all evidence and legal argument on all issues raised in Shell's motion.  This matter is therefore ripe for summary judgment, and such judgment – if otherwise appropriate – may be granted in favor of either party.

## III.  Analysis

Simply stated, Shell here seeks to recover on drawback claims that it never timely made.
Shell suggests that it is entitled to recover drawback of HMT and ET that it failed to timely seek

---

[12]As Celotex noted, federal trial courts "are widely acknowledged to possess the power to enter summary judgments *sua sponte*, so long as the losing party was on notice that she had to come forward with all of her evidence."  Celotex Corp., 477 U.S. at 326 (1986); *see also* National Presto Indus., Inc. v. West Bend Co., 76 F.3d 1185, 1188 (Fed. Cir. 1996) (*quoting* Celotex Corp., 477 U.S. at 326); Peg Bandage, Inc. v. United States, 17 CIT 1337, 1339-40, 1349 (1993) (entering summary judgment in favor of plaintiff even though plaintiff did not cross-move for summary judgment on customs classification issue (*citing* Celotex Corp., 477 U.S. at 326)).  "By moving for summary disposition, [the moving] party is afforded the requisite notice which enables a court to enter judgment in favor of the non-moving party *sua sponte* on those claim(s) raised in the summary judgment motion."  Peg Bandage, 17 CIT at 1340 (*citing* Celotex Corp., 477 U.S. at 326).

because, according to Shell, the company otherwise complied with the statute and with Customs' regulations in filing the company's timely claims for drawback of import duties.  In particular, Shell focuses on its contention that the company's entries were not subject to the 1998 "correct calculation" regulations addressed in Aectra.  However, even if Shell was not required to "correctly calculate" the amount sought in its timely-filed drawback entry forms (to include in the calculation any sums for drawback of HMT and ET that the company wished to claim), Shell failed to take any action whatsoever to make or preserve claims for drawback of HMT or ET within the strict statutory three-year period in which all drawback claims must be filed.[13]

Shell does not even allege that it put Customs on notice that it was requesting drawback of HMT and ET within the statutory three-year period.  Rather, the entirety of Shell's actions within the three-year period indicated that the company was seeking drawback of import duties only. Shell's first indication that it wished to seek drawback of HMT and ET was in its protests, which were filed outside the mandatory statutory three-year window.  Distilled to its essence, Shell's argument seems to be that the company's timely-filed claims for drawback of import duties somehow implicitly included claims for drawback of HMT and ET.  But Aectra laid the concept of such "implicit claims" to rest.

Shell also seeks to avail itself of the statutory amendments that made HMT and ET eligible for drawback, but which were enacted well after Shell's claims for drawback import duties were filed and paid, the associated liquidations were protested, and the protests were denied.  Although

---

[13]Congress underscored the mandatory nature and the significance of the statutory three-year period for the filing of all drawback claims by expressly providing that "[c]laims not completed within the 3-year period shall be considered abandoned."  *See* 19 U.S.C. § 1313(r)(1).

a special provision of the 1999 amendments expressly authorized claimants such as Shell to file (or to re-file) otherwise untimely drawback claims, Shell failed to take advantage of this "second bite at the apple."

Shell argues in the alternative that it was justified in failing to file claims for drawback of HMT and ET within the regular statutory three-year period and/or within the special six-month grace period following the 1999 amendments. However, Shell's asserted justifications and excuses have no merit.

As outlined in greater detail below, Shell failed to file its drawback claims for HMT and ET in a timely fashion. Like the untimely claimant in <u>Aectra</u>, Shell is therefore entitled to nothing.

### A.  Shell's Failure to Timely Claim Drawback of HMT and ET

Shell goes to great lengths in an effort to distinguish this case from <u>Aectra</u>. As discussed herein, however, Shell's attempts to distance itself from <u>Aectra</u> meet with (at most) limited success. In any event, as the Government notes, Shell largely ignores the bigger picture: Even if (as Shell contends) the regulations then in effect did not require Shell to "correctly calculate" the amount of drawback sought, that would excuse only the company's failure to include sums for drawback of HMT and ET in the timely claims that the company filed seeking drawback of import duties. But Shell was nevertheless required to take some type of action within the statutory three-year period for the filing of drawback claims, in order to put Customs on notice of the company's claims for drawback of HMT and ET and to properly preserve those claims. That Shell failed to do.

Shell offers no adequate explanation for its failure to assert timely "protective claims" for

drawback of HMT and ET.  Further, contrary to Shell's assertions, the company's protests could not

operate to properly preserve its claims for drawback of HMT and ET, because the protests were not

filed within the statutory three-year period for the filing of drawback claims.  Finally, Shell contends

that its timely-filed claims for drawback of import duties implicitly included claims for drawback

of HMT and ET as well.  But that same argument was rejected in <u>Aectra</u>.  As such, Shell never

claimed for drawback of HMT and ET within the statutory three-year period for the filing of

drawback claims.

Shell also seeks to rely on the 1999 and 2004 amendments to the drawback statute.  But,

contrary to Shell's assertions, the 2004 amendments did not waive the normal statutory three-year

limit on the filing of drawback claims.  Further, although the 1999 amendments provided a special

six-month "grace period" for the benefit of claimants such as Shell who had drawback claims that

were otherwise untimely, Shell took no action to avail itself of that one-time opportunity to assert

its claims for drawback of HMT and ET.

Accordingly, Shell failed to timely claim drawback of HMT and ET – either during the

normal statutory three-year period for the filing of drawback claims, or during the special six-month

grace period established in the 1999 statutory amendments.

### 1.  Shell's Failure to Claim for Drawback of HMT and ET
### During Statutory Three-Year Period for Filing of Drawback Claims

Shell candidly concedes, as it must, that there are significant parallels between the instant

case and <u>Aectra</u>.  *See* Pl. Brief at 2-3; <u>Aectra</u>, 565 F.3d 1364; section I, *supra* (highlighting

similarities between <u>Aectra</u> and this case).  However, in an attempt to avoid the outcome in <u>Aectra</u>,

Shell spends much of its two briefs arguing what it contends is a critical factual difference distinguishing the present case from Aectra. Specifically, Shell asserts that – at the time it filed its claims for drawback of import duties – the Customs regulations then in force did not "require[] that a 'complete' claim include a claimant's calculation of the amount of drawback due, or . . . that such calculation include amounts other than those for import duties." *See* Pl. Reply Brief at 23 (emphasis omitted); *see also* Pl. Brief at 3, 8-9; Pl. Reply Brief at 1, 2-4, 22-24.[14] Shell thus maintains that its drawback claims "were, as filed, 'completed' within 3 years from exportation," unlike the drawback claims at issue in Aectra. *See* Pl. Reply Brief at 23-24; 19 U.S.C. § 1313(r)(1); 19 C.F.R. § 191.61 (1995); *see also* Pl. Brief at 3, 5. And Shell contends that it is therefore entitled to drawback of HMT and ET even though it never requested such drawback within the statutory three-year period

---

[14]*See generally* Pl. Brief at 3, 5-13 (arguing that 1995 regulations did not require claimant to specify total amount of drawback due as an element of a "complete" drawback claim, and asserting that 1998 regulation addressed in Aectra imposed new requirement on drawback claimants, which cannot be given retroactive effect); Pl. Reply Brief at 1, 2-8, 22-23 (arguing that, in contrast to 1998 regulation addressed in Aectra, 1995 regulations did not require claimant to specify total amount of drawback due as an element of a "complete" drawback claim, and asserting that – even if the 1995 regulations did include such a requirement – the requirement was limited to import duties only).

In its reply brief, Shell even goes so far as to challenge the reasoning and outcome in Aectra. Shell argues – contrary to Aectra – that, notwithstanding the 1998 regulations' express requirement that a drawback claimant correctly calculate the amount of drawback due, that calculation is not a component of a "complete" drawback claim, even under the 1998 regulations. *See* Pl. Reply Brief at 8-13. Shell argues in the alternative that, even if the correct calculation expressly required by the 1998 regulations is a component of a "complete" drawback claim, the requirement of a correct calculation is limited to import duties (and does not include taxes and fees) – again, contrary to Aectra. *See* Pl. Reply Brief at 13-18, 24. Shell thus appears to argue, in essence, that even if the 1998 regulation expressly requiring that a drawback claimant correctly calculate the amount of drawback due were to be given retroactive application, Shell's 1995 drawback claims nevertheless would be "complete."

for the filing of drawback claims.

But Shell accords far too much weight to the difference between the regulations that applied in Aectra and the regulations that apply in the case at bar.  The explicit nature of the 1998 regulation addressed in Aectra – 19 C.F.R. § 191.51(b) – may have made that case somewhat more straightforward; but the merits of the two cases are not fundamentally different.[15]  In any event,

---

[15]The Government vigorously disputes the overall thrust of Shell's argument – that the sums of drawback sought, as specified on the "drawback entry" forms that Shell certified and filed with Customs, have no bearing on this case.

The Government emphasizes that the history of the 1997-98 rulemaking undercuts Shell's assertions that the 1998 regulation expressly requiring that a claimant "correctly calculate the amount of drawback due" imposed a new obligation on drawback claimants.  *Compare* Def. Brief at 9-10 *with* Pl. Brief at 3, 5, 8-9, 11 *and* Pl. Reply Brief at 1, 3; 19 C.F.R. § 191.51(b) (1998).  For example, Customs explained, in promulgating the revised regulations, that one of the purposes of the changes to the drawback regulations was to "*clarify* what documents constitute a complete drawback claim."  62 Fed. Reg. 3082, 3087 (Jan. 21, 1997) (emphasis added).  To the same effect, the Government highlights the Court of Appeals' observation in Aectra, stating:

> As the Aectra court noted, in adopting the regulations in 1998, Customs expressly rejected a proposal that would have required Customs to refund all amounts due under the law regardless of whether the claimant identified that calculation.  Customs concluded that "*adoption*" of that procedure "would *create* an untenable administrative burden for Customs in its processing of drawback claims."

Def. Brief at 9 (*quoting* Aectra, 565 F.3d at 1373 (emphases added by Defendant) (citing 63 Fed. Reg. 10,970, 10,988 (March 5, 1998))).

The Government thus points out that – contrary to Shell's claims – "there is no reason to suggest that 19 C.F.R. § 191.51(b) created 'new duties with respect to transactions already completed.'"  *See* Def. Brief at 9 (*quoting* Pl. Brief at 11).  As the Government concludes, "the 'complete calculation' requirement [in the 1998 regulations] merely made explicit what was already a fundamental drawback concept."  Def. Brief at 9-10.

Viewed in this context, 19 C.F.R. § 191.51(b) (1998) "merely clarified that [a] drawback claimant [is] responsible for correctly calculating its drawback request, consistent with the prior relevant law."  *See* Def. Brief at 8.  Although – as Aectra recognized – the statute does not *expressly*

Shell's narrow, single-minded focus on the difference in the language of the regulations obfuscates the more important point in this analysis. Simply stated, Shell "cannot see the forest for the trees."

Whether or not the regulations then in force required (either implicitly or explicitly) that Shell "correctly calculate the amount of drawback due" as part of a "complete" drawback claim is largely beside the point. *See generally* Def. Brief at 6, 11-13 (noting that "[b]y alleging merely that the 1998 regulation did not apply to Shell's drawback claims, Shell overlooks the more fundamental point underlying the Aectra decision"). As the Government observes, "[r]egardless of whether Shell

_____

include a calculation requirement, the statute clearly requires the filing of "[a] drawback entry and all documents necessary to complete a drawback claim." *See* Aectra, 565 F.3d at 1371 (noting that "[t]he statute does not *expressly* require that a calculation of the amount of tax and fee drawback claimed be submitted along with the entry document in order to 'complete' a claim" (emphasis added)); 19 U.S.C. § 1313(r)(1). And, as explained above, even before the 1998 regulatory amendments, one of the "documents necessary to complete a drawback claim" was a completed drawback entry form – Customs Form 7539, entitled "Drawback Entry." *See* section I, *supra*; 19 C.F.R. § 191.2(h) (1995). That "drawback entry" form required that an importer state its "net claim" (that is, the monetary amount of drawback sought), and was required to be signed and certified by an authorized representative. Accordingly, even before the 1998 "clarify[ing]" amendments to the regulations, an importer filing a "complete" drawback claim was obligated to state for Customs the "net claim" that it sought, as a certain and specific sum. *See generally* Def. Brief at 9-10. On the drawback entry forms that Shell submitted to Customs here, nowhere did the company claim for (or even refer to) drawback of HMT and ET – much less include HMT and ET in the "net claim" figure that the company specified on each of the forms. *See generally* Def. Brief at 4-5, 6, 7, 13.

Finally, Shell sought accelerated payment of its drawback claims, a privilege that drawback claimants may request under Customs regulations. *See* 19 C.F.R. § 191.72 (1995); 19 C.F.R. § 191.92 (1998); Recording of Oral Argument at 44:10-44:17; *see also id*. at 34:35-34:55. Even the pre-1998 regulations required that a drawback claimant seeking accelerated payment include "a computation of the amount due." *See* 19 C.F.R. § 191.72 (1995). Thus, to the extent that the pre-1998 regulations did not expressly require a correct calculation as part of a "complete" drawback claim, the same certainly cannot be said of a request for accelerated payment of drawback. Those drawback claimants seeking accelerated payment, like Shell here, in fact were required to include "a computation of the amount due" – even before the regulations were revised in 1998. *See* Recording of Oral Argument at 1:43:35-1:44:05.

was exempted from a later explicit requirement to 'correctly calculate' the amount sought in its

drawback claim, Shell did not make or preserve *any* claim for HMT . . . or ET within the three year

statutory window." Def. Brief at 6 (emphasis added). Shell plainly was required to take *some kind*

*of action* within the statutory three-year period to put Customs on notice of the company's claim for

drawback of HMT and ET, if Shell wished to preserve such a claim.

Arguing that it was not entitled to recover drawback on taxes and fees until the 1999

amendments,[16] Shell apparently contends that, as a practical matter, it cannot be expected to have

sought to preserve a claim for HMT and ET within the three-year period established by statute for

the filing of all drawback claims. *See* Pl. Reply Brief at 4-6. But a sophisticated corporation like

Shell cannot reasonably feign naivete. The issue of the recoverability of drawback on taxes and fees

such as HMT and ET already had been percolating within the industry and the customs and

international trade community for some time. Indeed, as the Court of Appeals explained in Aectra,

the matter was actively being challenged (both initially before the agency, and then before the court)

in the timeframe at issue here. *See* Aectra, 565 F.3d at 1367 (*citing* Texport Oil Co. v. United States,

22 CIT 118, 1 F. Supp. 2d 1393 (1998), *aff'd-in-part, vacated-in-part, and rev'd-in-part*, 185 F.3d

1291 (Fed. Cir. 1999)); *see also*, *e.g.*, George E. Warren Corp. v. United States, 26 CIT 486, 201 F.

Supp. 2d 1366 (2002), *aff'd*, 341 F.3d 1348 (Fed. Cir. 2003) (action filed in Court of International

---

[16]Shell's position has not been entirely consistent. In its briefs, Shell argued that it was entitled to drawback on taxes and fees as of the 1999 amendments. *See*, *e.g.*, Pl. Reply Brief at 5. But in the course of oral argument, Shell asserted that it could not recover drawback on taxes and fees until 2004. *See* Pl. Reply Brief at 23 (stating that HMT and ET were not available for drawback until 2004); Recording of Oral Argument at 14:28-14:45; 15:05-16:18 (Shell argued that right to drawback of HMT and ET did not arise until December 3, 2004).

Trade in 1997, challenging Customs' denial of protest seeking drawback of HMT and ET).

In other words, it appears that others in the industry were at least contemplating what Shell asserts it could not (and need not) have done within the statutory three-year period in question. Even Shell itself raised the issue of drawback on HMT and ET in November 1997, when it filed the protests at issue – albeit somewhat beyond the statutory three-year period, given the export dates of the merchandise in question.[17]  Shell's own actions thus undermine its assertions that a company would have had to be "prescient" to have sought to preserve a right to seek drawback of HMT and ET before the statute was amended in 1999.  *See* Pl. Reply Brief at 23 (labeling as "prescient" all "drawback claimants who had filed claims for [HMT and ET] . . . years before the right to make such claims arose"); *id*. at 7 (arguing that drawback claimants would have required "prescience" to have sought to preserve future  right to claim drawback of HMT and ET).

Here – as in Aectra – it is not clear why, if the company wished to seek drawback of HMT and ET, it did not include a "protective claim" for such drawback within the statutory three-year period, whether by including HMT and ET in its timely-filed drawback claims (rather than claiming drawback only for import duties) or otherwise.  *See* Aectra, 565 F.3d at 1367 (noting that plaintiff there "offer[ed] no explanation for why it did not include protective claims for . . . HMT in its ten drawback claims other than its belief that such claims would not be successful at the administrative

---

[17]Shell offered no explanation as to why it was sufficiently "prescient" to file protests seeking  HMT and ET in November 1997, but lacked sufficient knowledge to assert such claims in a timely fashion within the statutory three-year period.  *See*  Recording of Oral Argument at 31:44-32:05.

level"); Def.'s Brief at 11 (asserting that Shell was required to make timely "protective claim").[18]

Finally, Shell's attempts to characterize its protests as "protective claims" for drawback of HMT and ET are in vain. *See See* Pl. Reply Brief at 19 (arguing that Shell's claims for drawback of HMT and ET "were 'preserved' by way of timely protest"); *see also id.* at 8 (asserting that Shell "timely protested Customs' liquidations '*in order to preserve*' any future claims which might arise"). Its assertions to the contrary notwithstanding, the protests that Shell filed with Customs in November 1997 cannot be deemed effective "protective claims," because the protests were not filed within the regular statutory three-year period for the filing of drawback claims. *See*, *e.g.*, Aectra, 565 F.3d at 1367 (discussing option of filing "protective claim"); Delphi Petroleum, Inc. v. United States, 33 CIT ____, ____, 662 F. Supp. 2d 1348, 1352 (2009) (explaining that, pursuant to Aectra, "an effective protective claim" must be "timely submitted, despite the fact that Customs would have rejected it").

In essence, Shell contends that it is entitled to drawback of HMT and ET even though it did not claim for (or even refer to) drawback of HMT and ET – much less include a "correct calculation" reflecting those sums – in the timely claims for drawback of import duties that the company filed with Customs. The Government puts it succinctly: "Although Shell's motion avoids using the term, Shell's claim for drawback of [HMT and ET] rests upon the theory that such claims were implicit in its proper and timely drawback claim for import duties." *See* Def. Brief at 11-12;

---

[18]*Cf*. Delphi Petroleum, Inc. v. United States, 33 CIT ____, ____, 662 F. Supp. 2d 1348, 1350-53 (2009) (addressing argument that letters referring to drawback of HMT and another similar tax/fee, which were attached to importer's drawback entries expressly seeking only import duties, constituted "protective claim" under Aectra; emphasizing that, pursuant to Aectra, "an effective protective claim" must be "timely submitted, despite the fact that Customs would have rejected it").

*see also id.* at 6 (noting that "Shell's argument amounts to a contention that [claims for HMT and ET] were somehow implicitly preserved").

Aectra expressly rejected this very argument.  Like Shell in this case, the plaintiff in Aectra asserted that claims for taxes and fees, including HMT, "were 'implicit' in its timely filing requesting a refund of customs duties" (*i.e.*, its drawback claim).  *See* Aectra, 565 F.3d at 1373 n.11. The Court of Appeals made short work of that theory, concluding that there was "no basis for such an argument." *See id.*, 565 F.3d at 1373 n.11; Def. Brief at 6, 12.  The same result must obtain here.[19]

_____

[19]Shell takes issue with Aectra's statement that there is "no basis" for the argument that a claim for drawback of taxes and fees is "implicit" in a timely-filed claim for drawback of customs duties.  *See* Pl. Reply Brief at 19 (*quoting* Aectra, 565 F.3d at 1373 n.11).  According to Shell, the decisions of this court in Texport and George E. Warren found claims for taxes and fees to be implicit in a claimant's claim for drawback of customs duties.  *See* Pl. Reply Brief at 19-22 (*citing* Texport, 22 CIT 118, 1 F. Supp. 2d 1393); George E. Warren, 26 CIT 486, 201 F. Supp. 2d 1366.

But Shell's reliance on Texport and George E. Warren is misplaced.  First, the facts of the two cases are readily distinguishable from those of the case at bar.  Moreover, the language that Shell relies upon in each case relates solely to the jurisdiction of the court (*i.e.*, whether Customs' denials of the claimant's protests concerning drawback of taxes and fees were properly before the court), and does not address whether the claimants properly sought drawback of taxes and fees from Customs in accordance with statutory and regulatory requirements, including those governing the timing of drawback claims – which is the issue presented here.  *See, e.g.*, George E. Warren, 341 F.3d at 1350-51 (in section captioned "Jurisdiction," noting that gravamen of Government's argument is that "drawback claims cannot first be raised in a protest," and highlighting "the sufficiency of a denial of a protest *for purposes of jurisdiction*") (emphasis added); *id.*, 341 F.3d at 1349 (previewing court's holding that "that the Court of International Trade *did have jurisdiction*, because the action contested denial of a protest . . .") (emphasis added); Texport, 22 CIT at 120, 1 F. Supp. 2d at 1397 (concluding that court "has *jurisdiction*," and rejecting Government's argument that plaintiff there "failed to exhaust its administrative remedies which precludes the Court from *jurisdiction*") (emphases added); *id.*, 22 CIT at 126-27, 1 F. Supp. 2d at 1401 (same).

Fundamentally, as Aectra explained, both Texport and George E. Warren must be read narrowly and confined largely to their facts.  *See generally* Aectra, 565 F.3d at 1374 & n.12

Under Shell's theory of the case, Customs would have had to somehow "divine" that Shell

intended to seek drawback of HMT and ET, despite the fact that Shell's timely-filed drawback

claims expressly sought drawback of import duties only, and made no reference whatsoever to HMT

or ET. *See* Def. Brief at 11. Such a scheme would be patently unworkable. Clearly Shell was

required to do *something* within the standard statutory three-year period to alert Customs that, in

---

(analyzing and limiting Texport and George E. Warren); Aectra, 31 CIT at 2091-92, 2094-95, 533
F. Supp. 2d at 1322, 1324-25 (same); *see also* Recording of Oral Argument at 1:42:29-1:43:20
(Government stated that, in contrast to this case, both Texport and George E. Warren focused on
court's jurisdiction, and that, as Aectra pointed out, neither Texport nor George E. Warren
specifically addressed timeliness under three-year period established in 19 U.S.C. § 1313(r)(1);
Government further noted that, unlike the protests in this case, the protests seeking HMT and ET
in George E. Warren were filed within statutory three-year period).

More to the point, Shell in effect seeks to use its "implicit claim" theory to circumvent the
statutory requirement that all drawback claims be filed within three years after the date of
exportation of the substitute merchandise. In neither George E. Warren nor Texport was the
"implicit claim" theory employed for that purpose. And, indeed, the issue of the timeliness of the
importer's claims for drawback of taxes and fees was not raised by Customs in either appeal. *See*
Aectra, 565 F.3d at 1374 & n.12.

Further, in at least one of the two cases, it is clear from the court's opinion that the timeliness
of the importer's claims for drawback of taxes and fees could not have been at issue. Thus, for
example, in George E. Warren, the plaintiff had asserted its claim for HMT and ET for the first time
in a protest. *See* George E. Warren, 26 CIT at 487, 201 F. Supp. 2d at 1368. However, that protest
was filed comfortably within the statutory three-year period. *See* George E. Warren, 341 F.3d at
1349 (noting that importations were made between December 1995 and January 1996, and that
protest seeking drawback of HMT and ET was filed January 3, 1997); *see also* Aectra, 565 F.3d at
1374 (noting that protests seeking drawback of HMT and ET in George E. Warren were filed within
statutory three-year period); Pl. Reply Brief at 6 (same).

In any event, as discussed above, Aectra – which post-dates and carefully analyzes both
Texport and George E. Warren – showed little hesitation in dismissing the argument of the plaintiff
there that an "implicit" claim for drawback of taxes and fees was inherent in its timely-filed
drawback claim for customs duties. *See* Aectra, 565 F.3d at 1373 n.11. Shell has made no attempt
to differentiate its "implicit claim" argument from that which Aectra flatly rejected.

addition to drawback of import duties, Shell was also seeking drawback of HMT and ET.  *See* Def.

Brief at 11-12; *see also* Recording of Oral Argument at 1:35:25-1:36:38.[20]

     In this case, as in <u>Aectra</u>, Customs was never presented with a claim for HMT and ET during

the statutory three-year period, and therefore never could have considered it.  *See* Def. Brief at 12

(*quoting* <u>Aectra</u>, 565 F.3d at 1374).  Customs is not required to honor "phantom" claims; and Shell

is not entitled to recover on drawback claims that it never made.  *See* Def. Brief at 6, 12-13.

     Although Shell failed to assert any sort of "protective claim" for drawback of HMT and ET

within the regular statutory three-year period for the filing of drawback claims, and although claims

for drawback of HMT and ET were not "implicit" in its timely-filed claims for drawback of import

duties, Shell was by no means without recourse.  The 1999 amendments to the statute were designed

---

[20]At oral argument, the Government identified a number of specific ways in which Shell could have timely asserted and preserved drawback claims for HMT and ET.  *See* Recording of Oral Argument at 1:29:00-1:29:15; 1:32:40-1:33:50.  The Government suggested that Shell could have initially included the sums of HMT and ET drawback that it sought somewhere on its drawback entry forms or on attachments to those forms, or Shell could have filed timely amended claims seeking drawback of HMT and ET.  *See* Recording of Oral Argument at 1:32:40-1:33:50.  The Government further noted that, during the six-month grace period following the 1999 amendments, Shell could have sought dismissal without prejudice of its court action, or requested a remand to Customs, and then, in reliance on the 1999 amendments, filed a claim for drawback of HMT and ET with Customs.  *See* Recording of Oral Argument at 2:24:00-2:25:10.

     In addition, the Government indicated that – if Shell had filed its protests seeking drawback of HMT and ET within the statutory period – the Government would have consented to stipulated judgment in Shell's favor, as it has in other cases.  *See* n.8, *supra*.  Shell states that it was precluded from protesting the liquidations at issue here to seek drawback of HMT and ET within the statutory three-year period because liquidation had not yet occurred, and a party is not permitted to protest unliquidated entries.  *See* Recording of Oral Argument at 2:27:45-2:34:55.  However, a review of the relevant entry papers indicates that, contrary to Shell's representations, at least a few of the entries at issue here in fact were liquidated within the three-year period, and therefore could have been the subject of timely protests asserting claims for drawback of HMT and ET.

to afford relief to drawback claimants such as Shell, who had claims that were otherwise untimely. As discussed below, however, Shell once again failed to take the steps necessary to assert claims for drawback of HMT and ET in a timely fashion.

### 2. Shell's Reliance on 1999 and 2004 Amendments to Drawback Statute

Shell asserts that Congress intended the 1999 and 2004 amendments not only "to remove all doubt as to the drawback eligibility" of taxes and fees such as HMT and ET, but also to be "retroactive as to claims such as those at bar" which Shell contends "were 'preserved' by way of timely protest."  *See* Pl. Reply Brief at 19; *see also id.* at 7-8.  Shell is correct as to the first part of that proposition – that is, that Congress sought to amend the statute to provide for the eligibility for drawback of certain taxes and fees, including HMT and ET.  *See* Pl. Reply Brief at 19.  But the second half of Shell's assertion is erroneous, both as to the retroactivity of the amendments and their effect on the protests that Shell had previously filed.

Specifically, Shell's argument that Congress "made such amendments retroactive" by authorizing the filing of claims outside the normal three-year limit is true only as to the 1999 amendments.  The 2004 amendments applied only prospectively, and to "not yet finally liquidated [entries]" that "already included a timely protective request" for taxes and fees.  *See* Aectra, 565 F.3d at 1370.[21]  In stark contrast to the 1999 amendments, "[n]othing in the text of the [2004

---

[21]*See also* Delphi Petroleum, 33 CIT at ____ & n.9, 662 F. Supp. 2d at 1352 & n.9 (explaining that a drawback claim "is considered abandoned if it is not complete within three years of the date of export of the substitute merchandise," and noting, *inter alia*, that "Aectra held that the 2004 Trade Act 'did not suspend' [the three-year] statutory time limitation period with respect to HMT and MPF drawback claims").

amendments] states or suggests that [the 2004 amendments were] intended to waive the normal three-year limit" on the filing of drawback claims as set forth in the statute. *See* Aectra, 565 F.3d at 1369-71 (*inter alia*, contrasting language of 1999 amendments with that of 2004 amendments). Shell's reliance on the 2004 amendments is therefore misplaced; they add nothing to its case.

Shell's invocation of the 1999 amendments is equally unavailing. Although – as Shell correctly notes – the 1999 amendments expressly authorized the filing of drawback claims outside the standard statutory three-year period, Shell ignores the specific requirements that Congress imposed as to the procedure and timing for asserting such otherwise untimely claims. Shell failed to fulfill those requirements.

As the Court of Appeals observed in Aectra, one effect of the 1999 amendments was to "creat[e] *a six-month grace period* in which otherwise untimely claims could be *filed or re-filed* to obtain relief." *See* Aectra, 565 F.3d at 1370-71 (emphases added).[22] Shell could have availed itself

_____

[22]The 1999 amendments specified, in relevant part:

> The amendments made by this section [amending this section] shall take effect as if included in the amendment made by section 632(a)(6) of the [1993] North American Free Trade Agreement Implementation Act. For purposes of section 632(b) of that Act [providing that the NAFTA Implementation Act amendments applied to any entry filed after 1988 or unliquidated as of the Act's passage], the 3-year requirement set forth in section 313(r) of the Tariff Act of 1930 shall not apply to any drawback claim *filed* within *6 months after* the date of the enactment of this Act [June 25, 1999] for which that 3-year period would have expired.

1999 Trade Act, § 2420(e), 113 Stat. 179 (emphases added; first and fourth alteration in original) (citations omitted); *see also* Aectra, 565 F.3d at 1370-71.

As discussed above, Shell did not "file[]" a "drawback claim"; and the company certainly did not do so in the "6 months *after*" June 25, 1999. There can be no assertion that Shell's *previously*-denied protest or its *already*-pending court action constituted a "drawback claim *filed*

of that special six-month grace period, which was in no way limited to "only those prescient . . . drawback claimants who had filed claims for [HMT and ET] . . . years before the right to make such claims arose." *See* Pl. Reply Brief at 23; *see also id*. at 7.  It is nevertheless undisputed that – in the six months following the 1999 amendments – Shell took no action to file (or re-file) drawback claims for HMT and ET, notwithstanding the plain language used by Congress.  *See* Aectra, 565 F.3d at 1370-71 (*quoting* "Effective Date" provision, 1999 Trade Act, § 2420(e), 113 Stat. 179).

Moreover, the calculated use of the terms "filed" and "after" in the language of the 1999 amendments – expressly requiring that "a drawback claim [be] *filed* within 6 months *after* the date of the enactment" of those amendments – refutes any suggestion that Shell's untimely, previously-filed and -denied protests sufficed to protect whatever rights to drawback of HMT and ET that the company otherwise may have had.  *Compare* Pl. Reply Brief at 19 (asserting that Congress "made . . . amendments retroactive as to claims such as those at bar which were 'preserved' by way of timely protest"); *id*. at 8 (stating that Shell "timely protested Customs' liquidations 'in order to preserve' any future claims which might arise" (emphasis omitted)).  The unambiguous language of the 1999 amendments makes it abundantly clear that a party's affirmative action – that is, the "fil[ing]" of a "drawback claim" – was required "within 6 months after the date of the enactment" of the amendments, in order to recover for "any drawback claim . . . for which [the normal] 3-year period would have expired."

Shell has offered no adequate explanation as to why, in the wake of the 1999 amendments, it took no action to avail itself of the opportunity to "file[]" (or re-file) a drawback claim for HMT

within six months *after*" the enactment of the 1999 amendments.  (Emphases added.)

and ET within the six-month grace period provided for in the amendments.[23]   The Government

suggests, for example, that Shell could have sought dismissal without prejudice of its court action,

or requested a remand to Customs, and, in reliance on the 1999 amendments, thereafter filed a claim

with Customs for drawback of HMT and ET, in order to properly preserve the company's rights.

*See* Recording of Oral Argument at 2:24:00-2:25:10.   Had Shell filed such a claim during the six-

month grace period, it would have been considered timely.   *See* Recording of Oral Argument at

2:23:15-2:25:05.   But Shell made no attempt to raise the matter, either vis-a-vis the court or

otherwise.   It is therefore of no moment that Shell's protests previously had been denied and that

those denials were already before this court at the time the statute was amended in 1999.   *See* Pl.

Reply Brief at 6 (stating that "by the time Congress had enacted the 1999 [amendments], Customs

had already ruled on the merits of Shell's claims for drawback of [HMT and ET] when denying its

protests"); Recording of Oral Argument at 16:20-16:55; 21:04-21:25.

     In sum, although the 1999 amendments unambiguously suspended the statutory three-year

limit for the filing of drawback claims, the amendments did so only as to otherwise untimely claims

that an importer "*filed* within 6 months *after* the date of the enactment of [the 1999 amendments]

[*i.e.*, June 25, 1999]."   *See* "Effective Date" provision, 1999 Trade Act, § 2420(e), 113 Stat. 179

(emphases added).   Congress was under no obligation to provide for a grace period for claims

---

[23]Shell's argument that it would have been futile to file a drawback claim for HMT and ET in the six-month grace period has no legs, as discussed in section III.B.1 below.   *See generally* <u>Aectra</u>, 565 F.3d at 1373-74.

outside the regular statutory three-year period.[24]  It follows that, having elected to provide for such a grace period, Congress was entitled to require that parties seeking to avail themselves of the grace period "file[]" (or re-file) their claims *and* do so within a specified period of time,  whether for reasons of Customs' administrative convenience and efficiency or otherwise.

Indeed, Aectra expressly rejected the type of scenario that Shell here envisions, where "a claimant could submit a partial claim for duty that would be fully paid by Customs as requested, and then institute a second proceeding, perhaps years later, requesting by protest an additional amount, thereby plainly increasing the cost and complexity of processing the claim."  *See* Aectra, 565 F.3d at 1372; *see also* Delphi Petroleum, 33 CIT at ____, 662 F. Supp. 2d at 1352 (*quoting* Aectra, 565 F.3d at 1372); Def. Brief at 13 (same).  As Aectra explained, the statutory and regulatory scheme is designed "to promote the orderly administration of the drawback system."  *See generally* Aectra, 565 F.3d at 1372-73.  Congress' express requirement that importers such as Shell "file[]" or re-file their otherwise untimely claims for drawback of HMT and ET within a certain specified period of time was a reasonable means to that end.

### B.  Shell's Asserted Justifications and Excuses for Its Failure to Comply With Statutory Limitations on Timing of Claims for Drawback of HMT and ET

As discussed above, Shell failed to timely claim drawback of HMT and ET, both during the normal statutory three-year period for the filing of drawback claims and during the special six-month grace period following the 1999 statutory amendments.  However, raising a handful of asserted

---

[24]*Cf*. Aectra, 565 F.3d at 1370 (as to 2004 amendments, acknowledging Congress' authority to "limit the right [to claim drawback for HMT] to those who had previously attempted to claim it within the three-year limitations period").

justifications or excuses, Shell argues that its failure to timely file its drawback claims for HMT and ET should not operate to bar them.

At the outset, it is unclear to what extent Shell's asserted excuses and justifications should be entertained.  The language of the drawback statute expressly states that "[c]laims not asserted within the 3-year period shall be considered abandoned," and, further, clearly limits exceptions to that general rule, providing that "[n]o extensions will be granted unless it is established that the Customs Service was responsible for the untimely filing."  *See* 19 U.S.C. § 1313(r)(1).  Shell has not addressed the significance of these statutory provisions in this context or their application in this case, either in its briefs or in oral argument.  However, because Shell's various asserted excuses and justifications fail for other reasons (as set forth below), there is no need to reach the issue here.

In an effort to excuse or justify its failure to avail itself of the special six-month grace period following the 1999 amendments, Shell first contends that it would have been futile for the company to assert its claims for drawback of HMT and ET.  In addition, based on its premise that the "right" to drawback of HMT and ET did not truly arise until the 2004 amendments, Shell invokes the so-called "default rule" (which provides that a statute of limitation generally begins to run when a cause of action accrues) to argue that the statutory three-year time limit does not bar its claims.  And, finally, Shell contends that its failure to take timely action was justified due to its fear that Customs would penalize the company if it claimed drawback of HMT and ET.

The analysis set forth below explains that <u>Aectra</u> rejected the doctrine of futility as a justification or excuse for failure to timely file claims for drawback of taxes and fees such as those at issue here.  Shell fares no better on its two remaining asserted justifications or excuses.  Both were

raised for the first time in oral argument, and therefore are untimely and must be deemed waived.

But, in any event, even if they were considered on the merits, Shell still would not prevail.

### 1.  Futility

According to Shell, because Customs had denied its protests "well before enactment of the

1999 amendments," it would have been pointless for Shell to file a claim for drawback of HMT and

ET during "the six month 'sunset' period" (*i.e.*, the six-month grace period) following the 1999

amendments.  *See* Pl. Reply Brief at 6; *see also* Recording of Oral Argument at 17:25-21:40.  Shell

further contends that the filing of a claim for drawback of HMT and ET during the six-month grace

period was rendered even more futile by the Court of Appeals' decision in Texport.  *See* Recording

of Oral Argument at 18:52-21:40; 29:45-31:40 (discussing Texport, 185 F.3d at 1296-97).  As

discussed in section I above, the Texport decision issued shortly after the 1999 amendments went

into effect, and interpreted the amended statute as barring drawback of "nondiscriminatory" taxes

and fees such as HMT and ET.  *See* Texport, 185 F.3d at 1296-97.

In an attempt to buttress its futility argument, Shell cites George E. Warren, in which the

Court of Appeals sustained the Court of International Trade's ruling that – under facts significantly

different from those of this case – the importer was not required to file a drawback claim for HMT

and ET where Customs had previously denied the importer's protest seeking such drawback.  *See*

Pl. Reply Brief at 6-7; George E. Warren, 341 F.3d at 1350-51.

As the Government notes, however, the  purported futility of claiming drawback of HMT

and ET does not excuse a failure to file a claim within the statutory three-year period.  *See* Def. Brief

at 10-11; Recording of Oral Argument at 1:29:43-1:30:30.  Aectra thus expressly rejected an

argument similar to that raised by Shell here, explaining that:

> [F]utility does not excuse the failure to file a proper claim for limitations purposes.
> *A claimant is generally required to file a complete and specific claim within the
> limitations period*, even if the government authority to whom the claim is presented
> is certain to dispute the validity of the claim.

*See* Aectra, 565 F.3d at 1373 (emphasis added).[25]  The general rule stated by the Government and

applied in Aectra effectively disposes of Shell's futility argument here.

Moreover, there is no truth to Shell's assertion that the instant case and George E. Warren

"are identical in all material respects."  *See* Pl. Reply Brief at 6-7.  There are at least two significant

differences.  As a threshold matter, the futility argument in George E. Warren was raised solely in

the context of jurisdiction – an issue that is not presented in the case at bar.  *See* George E. Warren,

341 F.3d at 1350-51; Aectra, 565 F.3d at 1374 (discussing George E. Warren); *see also* n.19, *supra*.

In addition, unlike Shell, the plaintiff importer in George E. Warren asserted its claims for drawback

of HMT and ET *within the statutory three-year period.  See* George E. Warren, 341 F.3d at 1349-50;

Aectra, 565 F.3d at 1374 (discussing George E. Warren); *see also* Recording of Oral Argument at

---

[25]*See also* Aectra, 565 F.3d at 1373-74 (*citing* United States v. Clintonwood Elkhorn Mining
Co., 553 U.S. 1, 5, 13-14 (2008) (holding that refund suit for tax imposed in violation of Export
Clause, filed beyond applicable period of limitations, was barred where claimant had failed to first
present timely administrative claim to Internal Revenue Service, even though there was little – if any
– reason to believe that claim would have been granted); Frazer v. United States, 288 F.3d 1347,
1354-55 (Fed. Cir. 2002) (noting that possible futility of filing action and "considerable doubt"
about viability of claims did not justify failure to comply with statute of limitations, and discussing
Boling v. United States, 220 F.3d 1365, 1374 (Fed. Cir. 2000)); Boling v. United States, 220 F.3d
at 1374 (stating that, although "[i]t is true that during the period between the decision in Ballam
[which made claim at issue appear futile] and [Ballam's] subsequent reversal in Owen, any claim
by the plaintiffs . . . would have been difficult," that difficulty did not justify tolling the statute of
limitations)).

1:42:30-1:43:20.  In discussing George E. Warren, Aectra underscored the importance of such

distinctions:

> [The] opinion in [George E. Warren] does not suggest that a party may be excused
> from a failure to comply with the statute of limitations by arguing futility.
>
> In any event, even if George E. Warren were viewed as relevant to the limitations
> issue, that case dealt with the unique circumstance in which Congress in 1999
> extended the three-year statute of limitations after Customs (in acting on a protest)
> had denied the requested refunds; at most [George E. Warren] held that under such
> circumstances the filing of a new claim in the extended limitations period was
> unnecessary since Customs already had notice of the claim.  No comparable
> circumstances exist here since *Customs was never presented with*, *and therefore
> never addressed*, *Aectra's claim for HMT during the limitations period*.

See Aectra, 565 F.3d at 1374 (emphasis added; footnote omitted).  As in Aectra, so too in the instant

case, "Customs was never presented with, and therefore never addressed" Shell's claims for

drawback of HMT and ET during the regular statutory three-year period for the filing of drawback

claims – or even within the six-month grace period following the enactment of the 1999

amendments.

In short, even a well-founded belief that asserting a claim would be fruitless does not excuse

a failure to comply with a statutory requirement that all claims be filed within a specified period of

time.  See Aectra, 565 F.3d at 1373 (stating that "futility does not excuse the failure to file a proper

claim for limitations purposes").  Shell's futility argument therefore must fail.

## 2.  The "Default Rule"

Shell's second excuse – raised for the first time in the course of oral argument – is the so-

called "default rule," which refers to the broad principle that "Congress generally drafts statutes of

limitations to begin when the cause of action accrues" and "legislates against the 'standard rule that

the limitations period commences when the plaintiff has a complete and present cause of action.'"

*See* Graham County Soil & Water Conservation Dist. v. United States, 545 U.S. 409, 418 (2005)

(*quoting* Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of California, 522

U.S. 192, 201 (1997)).[26]  In other words, "[w]hile it is theoretically possible for a statute to create

a cause of action that accrues at one time for the purpose of calculating when the statute of

limitations begins to run, but at another time for the purpose of bringing suit," a court "will not infer

such an odd result in the absence of any such indication in the statute."  *See* Reiter v. Cooper, 507

U.S. 258, 267-68 (1993).

Emphasizing that Texport (which interpreted the statute as amended in 1999 to preclude

drawback of HMT, and, by extension, ET) was issued shortly after the 1999 amendments, Shell

argues that the "right" to drawback did not arise until the effective date of the 2004 amendments.

From that premise, Shell reasons that – based on the default rule – if the "right" to drawback of

HMT and ET did not arise until 2004, the time period for claiming the right presumably did not

begin before that time.  *See* Recording of Oral Argument at 14:28-14:45; 15:05-16:18 (Shell argued

that right to drawback of HMT and ET did not arise until 2004; and that, per default rule, Congress

did not intend time for making claim to expire before right to claim arose, and thus did not intend

for new right not to apply to previous entries the liquidation of which was not final).  In making its

argument, Shell discounts the Court of Appeals' statement in Aectra that the 2004 amendments in

---

[26]*See also* Recording of Oral Argument at 15:05-15:38 (Shell stated that it bases its default
rule argument on a 2005 U.S. Supreme Court decision, though it did not name the case).

fact were "not designed to create a new right," but instead were intended to overrule <u>Texport</u> and thus to clarify the pre-existing right to drawback of HMT.  *See* <u>Aectra</u>, 565 F.3d at 1369-70; Recording of Oral Argument at 12:15-13:55 (Shell argued that statement in <u>Aectra</u> is inconsistent with conceptual underpinnings of default rule).

Shell's "default rule" argument is both untimely and lacking in merit.  As noted above, Shell raised the argument for the first time at oral argument.[27]  Shell's briefs do not even allude to the default rule, much less articulate a position on the relevance and application of the rule to the facts of this case.  By failing to brief the point, Shell waived its right to press its default rule argument here.  *See*, *e.g.*, <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002) (holding that party waived argument which was not presented to Court of International Trade "until after [the party] had filed its principal summary judgment brief," reasoning that "parties must give a trial court a fair opportunity to rule on an issue other than by raising that issue for the first time in a reply

---

[27]In the course of oral argument, Shell assured the Court that it would seek leave to "provide a short brief on the default rule as it applies to . . . the retroactive application of the 2004 amendment."  *See* Recording of Oral Argument at 14:45-15:05.  However, Shell never filed a supplemental brief, or sought leave to do so.

In oral argument, Shell also asserted, in passing, that Supreme Court precedent on the separation of powers doctrine is inconsistent with the Court of Appeals' observation in <u>Aectra</u> that "the 2004 . . . amendment was not designed to create a new right," but, rather, to clarify that HMT was already eligible for drawback.  *See* Recording of Oral Argument at 12:10-13:45 (discussing <u>Aectra</u>, 565 F.3d at 1369-70).  However, Shell never elaborated further on its "separation of powers" argument.  And, certainly, the point was not raised in either of Shell's briefs.

On the wafer-thin record (particularly given the absence of any briefing), it is impossible to address the merits of Shell's separation of powers argument in any meaningful way.  In any event, the fact that Shell never briefed the argument and instead raised it for the first time in oral argument precludes Shell from pressing the point in this action.  *See*, *e.g.*, <u>Novosteel SA v. United States</u>, 284 F.3d 1261, 1273-74 (Fed. Cir. 2002).

brief"). However, even if Shell had briefed (and thus properly preserved) its default rule argument, it appears that Shell nevertheless could not prevail.

As an initial matter, Shell has not established that the default rule applies to administrative deadlines, such as the statutory three-year period for the filing of drawback claims at issue here; and the court's own preliminary legal research has disclosed no instances in which the default rule has been applied other than cases involving statutes of limitations for the commencement of actions in court.

Even more to the point, though, there is no need to resort to the default rule here. As explained above, the default rule is an interpretative tool for use where a particular statute is ambiguous and arguably could be read to provide that a statute of limitations begins to run before the associated cause of action accrues. *See* Dodd v. United States, 545 U.S. 353, 360 (2005) (discussing Graham County, and noting that the text of the statute there was "ambiguous," warranting use of default rule). But Shell has identified no ambiguity in the statutory scheme at issue to justify invoking the default rule. Shell, in effect, seeks to use the default rule for another purpose entirely.

As discussed at some length above, the period within which all drawback claims must be filed is specified by statute, which is clear and unequivocal: "a drawback entry and all documents necessary to complete a drawback claim . . . shall be filed . . . *within* [*three*] *years* after *the date of exportation or destruction of the articles on which drawback is claimed.*"  *See* 19 U.S.C. § 1313(r)(1) (emphasis added).  The drawback statute thus establishes both the event that gives rise to the right to drawback and commences the period for the filing of a claim (*i.e.*, the "exportation

or destruction" of the subject merchandise), and also the duration of the period within which a drawback claim may be filed (*i.e.*, three years from the date of "exportation or destruction").  As such, there is no uncertainty or incongruence as to when the right to claim drawback arises and when the statutory three-year period for the filing of drawback claims commences – and both are the same date.  Under these circumstances, there is no apparent ambiguity for the default rule to resolve.

Congress' decision not to include a grace period in the 2004 amendments evinces a clear intent to preclude drawback of fees and taxes such as HMT and ET by those importers – like Shell – who did not claim such drawback within the regular statutory three-year period, and who then also failed to file such claims in the six-month grace period following the 1999 amendments.  *See generally* Aectra, 565 F.3d at 1370 (concluding that, although the 2004 amendments apply to previously filed drawback entries, the liquidation of which were not yet final, "[n]othing in the text of the [2004 amendments] states or suggests that [the 2004 amendments were] intended to waive the normal three-year limit imposed by 19 U.S.C. § 1313(r)(1)").[28]

Congress predicated the right to drawback of HMT and ET on the filing of a timely claim for such drawback, either during the regular statutory three-year period or during the six-month grace period following the 1999 amendments.  The default rule that Shell invokes does not, and cannot, provide otherwise.  Therefore, like its futility argument, Shell's "default rule" argument also must fail.

---

[28]*See also* Aectra, 565 F.3d at 1370 (stating that "it was not unreasonable to assume that Congress would limit the right [to drawback of HMT] to those who had previously attempted to claim [drawback of HMT] within the three-year limitations period).

3. <u>Shell's Alleged Fear of Revocation of Its Accelerated Payment Privileges</u>

As its third and final attempt to justify its failure to claim drawback of HMT and ET either within the statutory three-year period or within the six-month grace period following the 1999 amendments, Shell asserted for the first time in oral argument that – if it had filed such a claim before the 2004 amendments – the company would have been penalized by Customs.  Specifically, Shell argued that Customs would have treated pre-2004 drawback claims for HMT or ET as "repeatedly file[d] claims in excess of the amount due," and would have revoked the company's accelerated payment privileges pursuant to 19 C.F.R. § 191.72(d).[29]  *See generally* 19 C.F.R. § 191.72(d) (1995) (providing that "[a]ccelerated payment [of drawback] will be denied to claimants who repeatedly file claims in excess of the amount due"); Recording of Oral Argument at 34:20-45:28; 1:53:07-1:55:00; 2:19:12-2:21:54; *see also id.* at 1:59:22-2:07:53 (argument by counsel for other petroleum companies).[30]  Shell maintains that its failure to "file[]" (or re-file) a claim for drawback of HMT and ET either within the regular statutory three-year period or during the six-month grace period following the 1999 amendments therefore should be excused.

Yet again, Shell's asserted defense is untimely as well as unfounded.  As noted above, Shell raised the spectre of revocation of accelerated payment privileges for the first time in the course of oral argument on its pending motion.  Significantly, neither of Shell's briefs included even a citation

---

[29]As note 15 -above explains, Customs regulations permit claimants to request accelerated payment of drawback claims.  *See* 19 C.F.R. § 191.72 (1995); 19 C.F.R. § 191.92 (1998).

[30]At oral argument on Shell's Motion for Summary Judgment, Citgo Petroleum Corporation, Texaco Refining & Marketing Inc., and Texaco Aviation Products, LLC were permitted, with the consent of all parties, to offer brief argument in support of Shell's position.  They are referred to herein generally as "the other petroleum companies."

to 19 C.F.R. § 191.72(d) (the regulation on which Shell now relies), much less an argument

predicated on it.[31]  By failing to timely raise and brief the issue, Shell has waived its right to raise

19 C.F.R. § 191.72(d) and any potential for revocation of accelerated payment privileges as a

justification for its failure to timely file its claims for drawback of HMT and ET.  *See*, *e.g.*,

Novosteel, 284 F.3d at 1273-74 (holding that an argument raised for the first time in a reply brief

is waived).

Even if Shell had briefed (and thus properly preserved) its argument, however, it nevertheless

would not succeed.  When pressed at oral argument, neither counsel for Shell nor counsel for the

other petroleum companies could cite even a single case in which Customs in fact had revoked a

---

[31]In its reply brief, Shell asserted that, under 19 U.S.C. § 1593a, "the filing of [drawback] claims for taxes and fees in 1995 would have subjected a claimant to . . . penalties imposed . . . for filing false drawback claims."  *See* Pl. Reply Brief at 8.  However, Shell's briefs made no reference whatsoever to 19 C.F.R. § 191.72(d) – the regulation that it invoked for the first time in the course of oral argument.  On the other hand, Shell made no reference to 19 U.S.C. § 1593a in oral argument.  Particularly under those circumstances, a single sentence in a reply brief is not sufficient to preserve an argument.  *See*, *e.g.*, Novosteel, 284 F.3d at 1273-74 (holding that an argument raised for the first time in a reply brief is waived).  Shell thus effectively waived and/or abandoned any argument that it may have had based on 19 U.S.C. § 1593a.

Even if Shell had properly preserved the argument, however, Shell could not prevail, because Shell did nothing to substantiate the argument.  For example, Shell did not identify even a single case where Customs imposed penalties for filing false drawback claims on a claimant that filed a drawback claim for taxes and fees in 1995 (or before).  Nor did Shell point to any other evidence to document its assertion that filing a drawback claim for taxes and fees in 1995 would have subjected a claimant to penalties for filing false drawback claims.  Similarly missing from the record is anything to establish that Shell in particular actually considered filing claims for drawback of HMT and ET in 1995, but then made a conscious decision not to do so out of fear that the company would be subject to penalties under 19 U.S.C. § 1593a.  Finally, and perhaps most importantly, even if Shell had properly preserved its argument, and even if that argument had been adequately substantiated, Shell has cited no case law or other authority to support the proposition that a fear of penalties under 19 U.S.C. § 1593a is sufficient to excuse a failure to comply with the statutory requirement that all claims for drawback be filed within three years.

drawback claimant's accelerated payment privileges because the claimant had sought drawback of

HMT and ET before 2004.  *See* Recording of Oral Argument at 37:35-41:55; 2:01:35-2:02:05.[32]

Indeed, Shell has offered nothing to substantiate its allegation that, if it had filed claims for

drawback for HMT and ET before 2004, Customs would have considered such claims to be

"repeatedly file[d] claims" that were "in excess of the amount due."  Similarly, Shell has pointed

to nothing to establish that – even if Customs had considered such claims to be "repeatedly file[d]"

and "claims in excess of the amount due" – the agency's response would have been to revoke Shell's

accelerated payment privileges.  Further, and even more importantly, there is a conspicuous lack of

any evidence to establish that – whatever the rest of the industry may or may not have believed –

---

[32]The sole case that Shell cited to support its assertion that Customs would have revoked Shell's accelerated payment privileges if the company had filed pre-2004 drawback claims for HMT and ET was a case that Shell raised for the first time in oral argument, and referred to as "the Pillsbury case."  *See* Recording of Oral Argument at 37:35-41:55; *see also* The Pillsbury Company v. United States, 22 CIT 769, 18 F. Supp. 2d 1034 (1998).  But Pillsbury is inapposite.

Contrary to Shell's implication, Pillsbury did not involve Customs' revocation of accelerated payment privileges.  Instead, Pillsbury concerned Customs' revocation of a claimant's authority to use the "Exporter's Summary Procedure" (which allows multiple shipments to be combined on a single drawback claim), as well as Customs' revocation of the claimant's "blanket waiver" (which excused the claimant from the regulatory requirement to provide Customs five working days' advance notice of the exportation of goods that would be the subject of a same condition drawback claim).  *See* Pillsbury, 22 CIT at 769-70, 18 F. Supp. 2d at 1035-36 (*citing* 19 C.F.R. § 191.53 (1993); 19 C.F.R. § 131.141(b)(2)(ii) (1993)).  Moreover, Customs' actions at issue in Pillsbury were triggered not by any pre-2004 filing of claims for drawback of HMT and ET, but, rather, by an ongoing investigation into the claimant's filing of drawback claims that Customs suspected were fraudulent.  *See* Pillsbury, 22 CIT at 770, 18 F. Supp. 2d at 1036.

Pillsbury therefore provides no support for Shell's assertion that Customs would have revoked Shell's accelerated payment privileges if the company had filed pre-2004 drawback claims for HMT and ET.  Pillsbury addressed the revocation of entirely different privileges for entirely different reasons.

Shell in particular actually considered filing claims for drawback of HMT and ET within the statutory three-year period for the filing of drawback claims, and/or within the six-month grace period following the 1999 amendments, but then affirmatively decided not to do so due to fear of loss of its accelerated payment privileges.

The entirety of Shell's 19 C.F.R. § 191.72(d) defense thus consists of little more than Shell's quotation of the text of the pre-1998 version of that regulation, and the bare representation of counsel for the other petroleum companies that – prior to the 2004 amendments – the industry feared that claiming drawback of HMT and ET would result in Customs' revocation of a drawback claimant's accelerated payment privileges.   However, unsupported apprehension, surmise, speculation, and conjecture are insufficient to excuse compliance with the normal statutory three-year limitation applicable to the filing of all drawback claims.[33]

---

[33]The 1998 amendments to Customs' regulations included amendments to the provisions governing accelerated payment of drawback on which Shell relies for its excuse.  The amended regulations do not include the language concerning "repeatedly file[d] claims in excess of the amount due" on which Shell premises its argument concerning the alleged fear of revocation of accelerated payment privileges.  *Compare* 19 C.F.R. § 191.72(d) (1995) *with* 19 C.F.R. § 191.92(f) (1998).   Instead, the amended regulations authorize Customs to revoke "the approval of an application for accelerated payment of drawback . . . for good cause (that is, noncompliance with the drawback law and/or regulations)."  *See* 19 C.F.R. § 191.92(f) (1998).

For all the reasons outlined above, Shell cannot here rely on the pre-1998 version of 19 C.F.R. § 191.72(d) to circumvent the statutory three-year limit on the filing of drawback claims.  For analogous reasons, Shell similarly cannot rely on the post-1998 version of the regulation to excuse its failure to "fil[e]" (or re-file) its claim for drawback of HMT and ET during the six-month grace period provided for in the 1999 amendments to the drawback statute.  Thus, for example, Shell has not even alleged, and certainly has not proved, that – had Shell filed a claim for drawback of HMT and ET within the six-month grace period – Customs would have considered that claim to be one not made "for good cause," much less that, in the event that Customs had reached such a conclusion, the agency would have responded by revoking Shell's accelerated payment privileges.

Finally, even if Shell had timely raised and briefed its argument concerning the alleged fear of revocation of accelerated payment privileges (which it did not), and even if Shell had adequately substantiated that argument (which it did not), it is also the fact that Shell has cited no case law or other authority for the bottom-line proposition that a fear of revocation of accelerated payment privileges should suffice to excuse Shell's failure to seek drawback of HMT and ET during the statutory three-year period for the filing of all drawback claims, or to "file[]" (or re-file) such claims during the six-month grace period established following the 1999 amendments to the statute.  Under the circumstances, there is no need to reach that issue here.

Like Shell's two other asserted excuses or justifications (discussed above), Shell's argument based on an asserted fear of revocation of accelerated payment privileges also must fail.

## IV.  <u>Conclusion</u>

For all the reasons set forth above, Customs did not err in denying Shell's protests seeking drawback of HMT and ET.  Plaintiff's Motion for Summary Judgment is therefore denied, and summary judgment in favor of Defendant is granted.

Judgment will enter accordingly.

/s/ Delissa A. Ridgway
_____
Delissa A. Ridgway
Judge

Decided:  June 20, 2011
            New York, New York

UNITED STATES COURT OF INTERNATIONAL TRADE

| | | |
|---|---|---|
| SHELL OIL COMPANY, C/O GULF COAST DRAWBACK SERVICES, INC., | : | |
| | : | |
| *Plaintiff*, | : | Court No. 08-00109 |
| v. | : | |
| UNITED STATES, | : | |
| *Defendant*. | : | |

## __JUDGMENT__

This action having been duly submitted for decision; and the Court, after due deliberation, having rendered a decision herein;

NOW, therefore, in conformity with said decision, it is

ORDERED that Plaintiff's Motion for Summary Judgment be, and hereby is, denied; and it is further

ORDERED that summary judgment be, and hereby is, granted in favor of Defendant; and it is further

ORDERED, ADJUDGED, and DECREED that this action be, and hereby is, dismissed.

/s/ Delissa A. Ridgway
Delissa A. Ridgway, Judge

Dated:  June 20, 2011
         New York, New York